FILED
2023 APR 10 AM 10: 25
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **YAZMIN GONZALEZ,** | § |
| **Plaintiff,** | § |
| **v.** | § |
| **ALLEVIATE FINANCIAL SOLUTIONS LLC,** a California Limited Liability Company | § |
| **Defendants.** | § |

EP23CV0146

## COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against Defendant Alleviate Financial Solutions LLC ("Alleviate") for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) the Texas Business and Commerce Code ("TBCC") law governing telephone solicitation, alleging as follows:

## INTRODUCTION

1. In January 2023, Plaintiff received a barrage of illegal telemarketing calls made on behalf of Defendant Alleviate by anonymous telemarketers soliciting debt relief services.

2. Plaintiff seeks redress under the TCPA and TBCC, demanding that the calls stop.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Counts I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

4. The Court has supplemental jurisdiction over Counts II under 28 U.S.C § 1367.

5. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

a) Defendant targets Texas when marketing their services and regularly conducts business in this District, including telephone solicitation.

b) Defendant's telemarketers, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Defendant Alleviate.

c) These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

7. Plaintiff YAZMIN GONZALEZ ("Plaintiff" or "Gonzalez") is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Defendant Alleviate to market their debt relief services.

8. Defendant ALLEVIATE FINANCIAL SOLUTIONS LLC ("Alleviate") is a limited liability company organized and existing under the laws of California with its principal address at 2600 Michaelson Drive, Suite 700, Irvine, California, 92614 and can be served via registered agent CSC-Lawyers Incorporating Service at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## FACTUAL ALLEGATIONS

9. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

10. Plaintiff successfully registered her phone number ending in 1859 on the National Do-Not-Call Registry ("DNC") on March 26, 2022.

11. Defendant Alleviate offers debt relief services to consumers.

12. Defendant Alleviate is controlled and operated by Michael Barsoum.

13. Defendant Alleviate hires and authorizes telemarketers to make unauthorized calls to thousands of consumers soliciting "debt relief services" on behalf of Defendant Alleviate.

14. Defendant Alleviate approves of the contracts with the telemarketers.

15. Defendant Alleviate authorizes the payments to the telemarketers.

16. Defendant Alleviate pays the telemarketers out of bank accounts they own and control.

17. Defendant Alleviate provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

18. Defendant Alleviate has full control over the telemarketers who solicit on their behalf and has the authority to stop the illegal phone calls that violate the TCPA however has refused to do so because violating the TCPA benefits Defendant Alleviate financially.

19. Within a two-day period, Plaintiff received at least five (5) unauthorized phone calls to her personal cell phone 1859 from telemarketers and representatives soliciting "debt relief services" on behalf of Defendant Alleviate ("the calls").

20. The calls 1-4 Plaintiff received from telemarketers calling on behalf of Defendant Alleviate advised Plaintiff they were calling from "US debt solution center" ("US debt").

21. With information and belief US debt is either a fake or generic name used by the telemarketers Defendant Alleviate hired to make illegal telemarketing calls at the direction and control of Defendant Alleviate.

22. With information and belief US debt is a call center based outside the United States.

23. Defendant Alleviate uses telemarketers such as US Debt to hide their true identity and duck liability for violating the TCPA.

24. With information and belief Defendant Alleviate relies on US debt to make telemarketing calls on its behalf, Defendant Alleviate has direct knowledge that such calls are being made to residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

25. With information and belief Defendant Alleviate relies on US debt to make telemarketing calls on its behalf, Defendant Alleviate hired them to interact with the public on Defendant Alleviate's behalf and therefore gave implied authority to represent Defendant Alleviate and call residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

26. Defendant Alleviate ratifies the behavior from US debt by knowing of the illegal conduct and failing to repudiate the conduct.

27. The calls 1-4 were generated using an automatic telephone dialing system ("ATDS") the has the capacity to store and produce telephone numbers using a random or sequential number generator, and to dial such numbers.

28. The calls 1-4 were not made to Plaintiff directly and could have reached anyone in the United States.

29. On March 31, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas telephone solicitation registration for Defendant Alleviate.

30. Defendant Alleviate does not qualify for an exemption from the registration requirement imposed by Tex. Bus. Com. Code 302.101 for telephone solicitation.

31. The calls were not made to Plaintiff for emergency purposes.

32. With information and belief Plaintiff has received more calls from telemarketers calling on behalf of Defendant Alleviate within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

33. On January 24, 2023, Plaintiff received three phone calls from telemarketers saying they were calling from "US debt solution center" soliciting debt relief services on behalf of Defendant Alleviate.

34. Plaintiff advised the telemarketers she did not have debt and was not interested in their services.

35. Despite Plaintiff advising the telemarketers she was not interested, Plaintiff received another call the next day on January 25, 2023.

36. Plaintiff answered and was connected to a female telemarketer that advised Plaintiff she was calling from "US debt solution center."

37. The female telemarketer stated to Plaintiff,

"Mam, the reason I'm calling is that you may be eligible for a debt settlement program in which we can help you to pay off all your unsecured debt."

38. Plaintiff was aggravated and frustrated by the calls and with the permission of a coworker named "Mabel" who knew would qualify for the program used her name during the call.

39. Plaintiff advised the female telemarketer her name was "Mabel Arredondo" for the sole

purpose of identifying the company responsible for the calls.

40. The female telemarketer asked Plaintiff about her debts, income, and other personally identifiable information.

41. The female telemarketer asked if Plaintiff can afford to make a minimum of a $250 monthly payment, which is one of Defendant Alleviate's qualifications.

42. The female telemarketer advised Plaintiff she was qualified and solicited Plaintiff for a debt relief program on behalf of Defendant Alleviate.

43. The female telemarketer asked for Plaintiff's name which confirmed the call was not made directly to Plaintiff and could have reached anyone in the United States.

44. The female telemarketer then transferred Plaintiff to a "senior account manager" named Ryan that stated he was with the "debt enrollment center."

45. Before the female telemarketer transferred the call to Ryan, the female telemarketer stated,

> " Ryan I have Mabel here on the other line she has a combined total of unsecured debt of $8,000 she is from the state of Texas and is interested in learning more about the program can you take the call now?"

46. Ryan accepted the call from the female telemarketer which confirmed Defendant Alleviate hires and authorizes telemarketers to make unauthorized calls to consumers soliciting their debt relief services.

47. Ryan was verifying Plaintiff's personal information and the call dropped.

48. Moments later, Plaintiff received another call from Ryan.

49. Ryan continued to verify Plaintiff's personal information and advised Plaintiff he will be performing a soft credit check to verify Plaintiff's debts.

50. Ryan advised Plaintiff she was approved and solicited Plaintiff for a debt settlement

program on behalf of Defendant Alleviate.

51. Ryan advised Plaintiff she will make a monthly payment of $276.52 for 31 months and will be completely debt free upon completion of the program.

52. Ryan then transferred Plaintiff to a representative named Frank with the "quality assurance" department.

53. Frank verified Plaintiff's personal information along with her debts and went over the debt settlement program from Defendant Alleviate.

54. Plaintiff received an email from Ryan that contained the contract from Defendant Alleviate. *Please see Exhibit A.*

55. The email Plaintiff received from Ryan revealed the company responsible for the calls.

56. Defendant's telemarketers initiated numerous unsolicited telephone calls despite Plaintiff repeatedly telling them she was not interested in their services and to not call her.

57. Table A below displays calls made to Plaintiff by Defendant:

TABLE A.

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 01/24/2023 | 10:22 AM | 432-271-4484 | Telemarketer calling from US debt solution center. Told them not interested. |
| 2 | 01/24/2023 | 11:04 AM | 424-738-8172 | Telemarketer calling from US debt solution center. Told them not interested. |
| 3 | 01/24/2023 | 11:16 AM | 424-738-8172 | Telemarketer calling from US debt solution center. Told them not interested. |
| 4 | 01/25/2023 | 3:11 PM | 281-535-1521 | Telemarketer calling from US debt solution center. Transferred me to Ryan call dropped. |

| | | | | |
|---|---|---|---|---|
| 5 | 01/25/2022 | 3:22 PM | 424-421-7677 | Ryan called back. Emailed me contract to sign from Alleviate. |

58. Each and every telemarketer Plaintiff spoke with calling on behalf of Defendant Alleviate failed to properly identify themselves and the party they were calling on behalf of.

59. Each and every call was placed without the maintenance of an internal do-not-call policy.

60. On information and belief, Defendant Alleviate did not have a written do-not-call policy while it was sending Plaintiff the calls.

61. On information and belief, Defendant Alleviate did not train its telemarketers on the existence and use of any do-not-call list.

62. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of her phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

63. Defendants' placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

**VICARIOUS LIABILITY OF DEFENDANT ALLEVIATE FOR ITS TELEMARKETERS TCPA VIOLATIONS**

64. Defendant Alleviate is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Us Debt. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

65. Defendant Alleviate markets their debt relief services through direct telephone solicitation by its hired telemarketer US Debt, who acts on its behalf. US Debt transfers live, hot leads to Defendant Alleviate and Defendant Alleviate accepts the leads. US Debt was Defendant Alleviate's agent when it made the prohibited calls on behalf of, and with the actual authority from, Defendant Alleviate pursuant to a contract that governs US Debt's telemarketing for Defendant Alleviate.

66. Defendant Alleviate directs, controls, authorizes, and pays US Debt to generate live-transfer leads for Defendant Alleviate's debt relief services through telephone solicitation.

67. Defendant Alleviate sets the criteria for qualifying leads, which US Debt must follow, and US Debt live-transfers leads qualified on those criteria exclusively to Defendant Alleviate. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client has over ten thousand in unsecured debt.

68. On information and belief, Defendant Alleviate writes or at least approves the call script US Debt uses when qualifying leads for Defendant Alleviate.

69. US Debt's telemarketers work for, and speak and act on behalf of, Defendant Alleviate.

70. The telemarketing of Defendant Alleviate's debt relief services constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Defendant Alleviate, the principal, with US debt acting as Defendant Alleviate's agent.

71. US Debt, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Defendant Alleviate's criteria, and then live-transferred Plaintiff to Defendant Alleviate's advisor to continue marketing debt relief services.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES TO PLAINTIFF

72. Plaintiff has been denied the use of her phone, enjoyment of his phone, and had the

functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing telemarketing calls.

73. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent a “nuisance and invasion of privacy.”

74. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant.

75. The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff.

## CAUSES OF ACTION

### COUNT I

### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77. Defendant and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least four (4) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an ATDS without prior express written consent.

78. Plaintiff was statutorily damaged at four (4) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

79. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

80. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS without prior express written consent.

**COUNT II – DNC Violations**
**Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)**
**(Against All Defendants)**

81. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

82. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

83. Even though Plaintiffs number has been registered on the National DNC Registry since March 2022, Defendant made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

84. Plaintiff suffered the following injuries from each and every ATDS Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

85. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 31-33, the Court may award up to $1500 per violation.

86. Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

**COUNT III**
**Violation of Tex. Bus. Org & Com. Code § 302.101**
**(Against All Defendants)**

87. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

88. In addition to the harm of illegal telephone solicitations, Texas law recognizes the difficulty of holding businesses that make them accountable.

89. To address that problem, Texas law requires "sellers" engaged in telemarketing to register with the state and provide the public the information necessary to hold a seller accountable: the seller's legal name, any assumed names, any organizational documents, the address for the principal place of business, each phone number used in telemarketing, names of officers and directors, and the name and address of the agent for service of process. Tex. Bus. & Com. Code § 302.001. *et. seq*.

90. The registration requirements reflect an important public policy of Texas: to "protect persons against false, misleading, or deceptive trade practices in the telephone solicitation business." *Id.* § 302.003. The law must be "liberally construed and applied to promote [that] purpose." *Id.* Moreover, sellers must post financial security to ensure their compliance, and an "attempted waiver of a provision of this chapter is void." *Id.* §§ 302.004, 302.107.

91. Chapter 302 defines a "seller" as a "person who makes a telephone solicitation on the person's own behalf." Id. § 302.001(5), A "telephone solicitation" is "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* §

302.001(7). "Item," in turn, means "property or a service." *Id.* § 302.001(1). Legal representation is a "service." *Id.* § 302.001(1).

92. Defendant is a "seller" because it makes telephone solicitations on its own behalf through salespersons, including both (a) those it "employ[s]" – US Debt and those it 'authorize[s] – such as third-party telemarketers. Id. § 302.001(4)-(5). The "items" it induces purchasers to receive is debt relief services. And the called parties are "purchasers" because they are "solicited to become…clients for [debt settlement programs].' Id. § 302.001(3).

93. Defendant engages in "telephone solicitation" because they initiate telephone calls to induce consumers into enrolling in their debt relief services. Id. § 302.001(1), (3), (7).

94. Because "a person makes a telephone solicitation if the person effects at attempts to effect a telephone solicitation," telephone calls initiated by telemarketers are attributable both to them individually and to Defendant. *See Id.* § 302 (emphasis added).

95. Texas law requires those whose products or services are offered through telephone solicitation from or to a location located in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." *Id.* at 302.003. Defendant effected the solicitations because it brought about and made them happen by employing or authorizing these salespersons to make the telephone solicitations and paying them to do so. *See* Effect, Black's Law Dictionary (11th ed. 2019) ("To bring about; to make happen.").

96. Because the telephone solicitations were made to Plaintiff, a "purchaser located in this state" of Texas, Defendant was obligated to comply with the registration and related requirements of Texas Business & Commerce Code § 302.001, *et seq*.

97. Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

a) Failure to obtain a certificate of registration for the business locations(s) from which each of the telephone solicitations was made;

b) Failure to post the registration certificate in a conspicuous place at each such location;

c) Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

d) Failure to file an addenda providing the required registration information for each salesperson;

e) Failure to make available at each location a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

f) Failure to post a $10,000 bond, letter of credit, or certificate of deposit to secure Defendant's compliance with Chapter 302.

g) Failure to appoint Texas' Secretary of State agent for service of process.

h) Failure to provide the complete street address of both (i) the location from which each solicitation was made and (ii) Defendant's principal location.

98. Each solicitation is a separate violation for which Defendant is subject to a penalty up to $5,000. *Id.* § 302.101, 302.302(a).

99. Defendant's violations of Chapter 302 harmed Plaintiff because she had to spend hours to track down information that should have been publicly available. To this day, Plaintiff does not

have sufficient information about Defendant, the locations from which the calls were made, and the persons responsible for them.

100. Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 ***for each violation***."

101. Plaintiff is further "entitled to recover all reasonable costs prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for four (4) calls.

E. An award of $1,500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for five (5) calls;

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for five (5) calls;

G. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA and Texas state law;

H. An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.

Dated: April 6, 2023,

Respectfully submitted,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859

## I. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 7, 2023,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859